GLR/byk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CONSOLIDATED BROKERS
INSURANCE SERVICES, INC.,
and STEVE M. ENOCH,

                       Plaintiffs,                              Civil Action

v.                                                Case No.  05-2199-GLR

PAN-AMERICAN ASSURANCE
COMPANY, INC., and PAN-AMERICAN
LIFE INSURANCE COMPANY,

                       Defendants.

## MEMORANDUM AND ORDER

Plaintiffs Consolidated Brokers Insurance Services, Inc. ("Consolidated Brokers") and Steve M. Enoch bring claims against defendants Pan-American Assurance Company, Inc. and Pan-American Life Insurance Company upon several grounds:  breach of contract; breach of covenant of good faith and fair dealing; promissory estoppel; fraud; and negligent misrepresentation.   The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c).   The matter is presently before the Court on Defendants' Motion to Stay and/or Dismiss and to Compel Arbitration (doc. 21).  For the reasons discussed below, the motion to compel arbitration is granted.

## I.      Background

Plaintiff Consolidated Brokers is a Kansas corporation with its principal place of business in Overland Park, Kansas.   Plaintiff Steve Enoch is the owner and president of

Consolidated Brokers.  Defendants Pan-American Assurance Company, Inc. and Pan-American Life Insurance Company are foreign insurance companies with their principal places of business located in New Orleans, Louisiana.

On November 13, 2002, Plaintiff Steve Enoch, on behalf of Consolidated Brokers, entered into a General Agent Contract ("GA Contract") and a Marketing General Agent Agreement Contract ("MGA Contract") with Defendants.  Under the terms of the GA Contract Plaintiffs agreed to sell life, disability, and annuity policies; service Defendants' business; and develop subordinate producers for Defendants by contracting and training them to sell these policies.  The MGA Contract appointed Plaintiffs as a marketing agent of Defendants to recruit and develop sales representatives to market Defendants' products and services.

The GA Contract provides that Defendants will pay Plaintiffs a First Year Premium Bonus and Renewal Bonus if certain production goals are achieved.  Plaintiffs assert these goals were met in 2003 and 2004.  The MGA Contract provides that Defendants will pay Plaintiffs compensation, as calculated under certain Override Schedules attached to the MGA Contract.  According to the Override Schedules for Defendants' Simplified Issue Whole Life and Graded Death Benefit ("Simplified Issue and Graded Death Benefit") products, Defendants would pay Plaintiffs a commission ranging between 20% and 30% of Plaintiffs' annualized first year maximum commissionable premium.

Plaintiffs allege that in July 2004 Defendants informed them that they were cancelling the MGA Contract and were also withdrawing their Simplified Issue and Graded Death Benefit products.  Plaintiffs further allege that in December 2004 Defendants informed them that the

2

premiums from their Simplified Issue and Graded Death Benefit products would not be included in the calculation of the First Year Premium Bonus and Renewal Bonus.

On February 24, 2005, Plaintiffs filed their Petition in the District Court of Johnson County, Kansas.  Defendants removed the action to this Court on May 16, 2005.  On October 3, 2005, Defendants moved for leave to file an amended answer to add the defense that this Court lacks jurisdiction over the dispute; because the contracts contain provisions that require any disputes arising out the contracts to be resolved by arbitration.  The Court granted the motion as unopposed on October 21, 2005.  Defendants filed their Second Amended Answer on that date.

Defendants filed their Motion to Stay and/or Dismiss and to Compel Arbitration (doc. 21) on October 20, 2005.  Plaintiffs oppose the motion on the grounds that Defendants have waived the right to arbitration.  They alternatively assert that if Defendants' motion to compel arbitration is granted, the arbitration agreement applies only to the GA Contract and not the MGA Contract.

Section 7.3 of the GA Contract includes the following provision:

> Any dispute arising between the parties under this Contract shall be governed by and construed and enforced pursuant to the laws of the state of Louisiana, excluding those laws relating to the resolution of conflict between laws of different jurisdictions.  Additionally, any disputes between the parties shall be resolved by arbitration conducted in New Orleans, Louisiana, in accordance with the commercial rules of the American Arbitration Association, and any award rendered in such arbitration may be confirmed in any court of competent jurisdiction.

The MGA Contract contains no arbitration clause.

3

Plaintiffs do not deny the existence or enforceability of the arbitration clause set forth in section 7.3 of the GA Contract.  But they argue that Defendants have waived their right to arbitration and that the GA Contract's arbitration clause does not apply to the MGA Contract. The Court will address each issue separately.

## II.   Have Defendants Waived the Right to Arbitrate?

Plaintiffs contend that Defendants have waived any right to arbitration by waiting "nearly eight months" after Plaintiffs' Petition was filed to affirmatively assert their arbitration defense. Defendants maintain that they have not waived their contractual right to arbitrate as they have not taken any action inconsistent with the right to arbitrate.  They further argue that essentially no discovery has occurred and any delay in filing the motion to compel arbitration was due to disruptions from Hurricane Katrina at Defendants' New Orleans headquarters.

A recent case from the District of Kansas summarizes the law as to waiver of the right to arbitrate.[1]   When a contract mandates arbitration, federal courts generally enforce the arbitration clause absent a waiver.[2]   Due to strong state and federal policies favoring arbitration, a party asserting a waiver of arbitration has a heavy burden of proof.[3]   A waiver of

---

[1]*Robinson v. Food Serv. of Belton, Inc.*, Civ. A. No. 04-2321-JWL, 2005 WL 1799212, at *2 (D. Kan. July 11, 2005).

[2]*Id.* (citing *Peterson v. Shearson/Am. Express, Inc*., 849 F.2d 464, 465-66 (10th Cir. 1988)).

[3]*Id.; Peterson,* 849 F.2d at 466.

4

arbitration rights requires an unequivocal demonstration of intent to waive.[4]   In determining whether the right to arbitration has been waived, the Tenth Circuit examines several factors:

> (1) whether the party's actions are inconsistent with the right to arbitrate;
> (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate;
> (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay;
> (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings;
> (5) whether important intervening steps (e.g., taking advantage of judicial discovery procedures not available in arbitration) had taken place; and
> (6) whether the delay affected, misled, or prejudiced the opposing party.[5]

Whether a waiver has occurred depends upon the facts of the particular case.[6]

Under the first factor, the Court examines whether Defendants' actions are inconsistent with the right to arbitrate.   Defendants here sought leave to amend their Answer to assert the arbitration clause relatively early in the litigation.   Defendants explain that any arguable delay was due to the impact of Hurricane Katrina on their headquarters in New Orleans.   They state that they were actively working on their case and trying to deal with the unusual circumstances forced upon them.   The Court finds that Defendants' actions thus far in the case are not inconsistent with their right to arbitrate.

---

[4]*Id.*

[5]*Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1489 (10th Cir. 1994).

[6]*Reid Burton Constr., Inc. v. Carpenters Dist. Council of S. Colo.*, 614 F.2d 698, 702 (10th Cir. 1980).

5

With regard to the second factor, i.e., whether the litigation machinery had already been substantially invoked, the parties were not far into preparation of the case when Defendants notified Plaintiffs of their intent to pursue arbitration.   Defendants filed their Motion to Stay and/or Dismiss and Compel Arbitration approximately two months after they exchanged their initial Rule 26(a)(1) disclosures.   Not much discovery had yet taken place.   Plaintiffs complain they had spent "considerable resources" researching the issues before Defendants notified them of their intent to arbitrate. It is likely, however, that Plaintiffs would have pursued the same research, whether the case was heard in a courtroom or by an arbitrator.

In *Reid Burton Constr., Inc. v. Carpenters Dist. Council of S. Colo.*,[7] the Tenth Circuit affirmed the district's court decision in which it found that the defendants had waived their right to arbitration based on their participation in numerous hearings, pretrial conferences, motions and other pleadings, and the deposing of witnesses, and where they did not demand enforcement of the arbitration agreement.[8]   In another case, the court affirmed the district court's finding of a waiver of the right to arbitrate where five of eight claims had already been litigated.[9]   The facts and circumstances of these two cases stand apart from this case, in that very little litigation had occurred before Defendants' filed their motion to compel arbitration.

---

[7]614 F.2d at 702-03.

[8]*Id*. at 703.

[9]*MidAmerica Fed. Sav. & Loan Assoc. v. Shearson/Am. Express, Inc*., 886 F.2d 1249, 1260-61 (10th Cir. 1989).

Addressing the third factor, the Court considers whether a party either requested arbitration close to the trial date or delayed for a long period before seeking a stay. Here Defendants did not request arbitration close to the trial date or delay for a long period before seeking a stay. They filed their motion to compel arbitration well over a year before the trial date. As previously discussed, the Court finds that Defendants here did not wait or suffer a lengthy delay before seeking to compel arbitration.

The fourth factor is not applicable in this case. No counterclaim has been filed.

The fifth factor for consideration is whether important intervening steps have taken place. The Court finds no important intervening steps during the five months between removal to this Court and the filing of the motion to compel arbitration.

The sixth factor asks whether a delay affected, misled, or prejudiced the opposing party. The Court finds that whatever delay may have occurred, if any, did not affect, mislead, or prejudice Plaintiffs. As already noted, Defendants did not wait a long time before filing the Motion to Compel Arbitration. The trial date was still far into the future. Relatively little discovery has occurred. The court in *MidAmerican*, found it significant in determining prejudice that common discovery steps not available in arbitration had been undertaken by both parties and that the party opposing arbitration had expended time and effort necessary to participate in full litigation.[10]   Such is not the situation in this case. The Court therefore finds that Plaintiffs have not been misled or prejudiced by any delay.

_____

[10]886 F.2d at 1261.

In conclusion, the Court finds the factors weigh in favor of Defendants.   Accordingly, the Court finds they have not waived the right to arbitration.

## III.   Does the Arbitration Clause Contained in the GA Contract Apply to the MGA Contract?

The second issue is whether the arbitration clause contained in the GA Contract applies to both contracts or only to the GA Contract.   Plaintiffs claim that only the issues involving the GA Contract are subject to arbitration.   They contend that the two contracts are independent of each other and that their claims under the MGA Contract, which has no arbitration clause, should not be subject to the GA Contract's arbitration agreement.   Defendants argue that the two contracts are sufficiently intertwined to make the arbitration provision applicable to claims under either contract.

Section 3 of the Federal Arbitration Act provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon an issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on the application of one of the parties stay the trial of the action until such arbitration has been held in accordance with the terms of the agreement, providing the applicant for the stay is not in default with such arbitration.[11]

The Supreme Court has long recognized and enforced a "liberal federal policy favoring arbitration agreements."   Under this policy doubts concerning the scope of arbitrable issues

---

[11]9 U.S.C. § 3.

generally should be resolved in favor of arbitration.[12]   But arbitration is a matter of contract; a party cannot be required to submit to arbitration any dispute which it has not agreed to submit.[13]   The question of whether the parties have submitted a particular dispute to arbitration is an issue for judicial determination; unless the parties clearly and unmistakably provide otherwise.[14]

Although parties cannot be required to submit disputes to arbitration when they have not agreed to arbitrate those disputes, the Tenth Circuit has rejected the notion that disputes arising out of an agreement that lacks an arbitration clause are *ipso facto* not subject to the arbitration clause of a related contract.[15]   In *ARW Exploration*, the Tenth Circuit enforced arbitration even though one of the contracts at issue did not contain an arbitration clause.[16]   Five of six joint venture agreements between the parties contained arbitration clauses. The sixth joint venture agreement (the "IFA agreement") contained no such clause. On appeal the Tenth Circuit

---

[12]*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

[13]*Howsam,* 537 U.S. at 83.

[14]*Id.*

[15]*See ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995), cert. denied, 525 U.S. 822 (1998) (holding that a dispute arising out of an agreement that lacked an arbitration clause was still subject to arbitration based on the broad arbitration provision contained in other agreements relating to the same joint venture); *National Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288 (10th Cir. 2004) (holding that a dispute arising out of the parties' hold harmless agreement was still subject to arbitration based on the arbitration clause in the parties' reinsurance agreement covering surety bonds, requiring arbitration of "any irreconcilable dispute between the parties").

[16]45 F.3d at 1462.

considered whether the district court erred in submitting disputes relating to the IFA agreement to binding arbitration. Affirming the district court, the Tenth Circuit quoted the district court's reasoning for subjecting disputes under the IFA Agreement to arbitration:

> While it is true that this agreement did not contain an arbitration clause, the IFA Agreement clearly relates to the on-going oil and gas ventures between the parties. Th[e] arbitration provision[s contained in the other five joint venture agreements are] clearly broad enough to encompass disputes with respect to the IFA Agreement.[17]

The Tenth Circuit found that the broad language of the arbitration clauses in the five other joint venture agreements, which provided that all "disputes shall be subject to binding arbitration" and that "[a]ny matter in dispute which is not provided for in this agreement or in the Joint Operating Agreement shall be settled by arbitration," clearly covered all matters arising out of the IFA Agreement.[18]

In *SCOR Reinsurance,* the Tenth Circuit reversed the district court's denial of a motion to compel arbitration of claims arising under an agreement lacking any provision for arbitration.[19]   The parties had entered into two separate agreements: a reinsurance agreement and a hold-harmless agreement.   The reinsurance agreement contained an arbitration clause that provided:   "[a]ny irreconcilable dispute between the parties to this [a]greement will be arbitrated . . . ."   The hold-harmless agreement contained no arbitration provision.   The Tenth Circuit disagreed with the district court's finding that the claims under the hold harmless

_____

[17]*Id*. at 1462

[18]*Id*.

[19]*SCOR Reinsurance*, 362 F.3d at 1290-92.

agreement were independent of the reinsurance agreement.   The court concluded that the two agreements were closely related and best interpreted as "two interdependent agreements part of a single transaction," thus the reinsurance agreement's broad arbitration clause also applied to the claims arising under the hold harmless agreement.[20]

The District Court of Kansas has compelled arbitration of two software service disputes arising under agreements lacking any arbitration provision, where the parties had software license agreements with broad arbitration clauses.[21]   In both cases the Court found the agreements under which the claims arose sufficiently related to the software license agreements with the arbitration provision so as to compel arbitration of those claims.[22]

In these cases, where there are two agreements at issue, one with an arbitration clause and one without, the courts first examined the breadth of the arbitration clause.   If the court found the arbitration provision to be broad by purporting to cover all disputes "related to" the agreement, the court then evaluated whether the agreements were sufficiently related to justify compelling arbitration of all claims arising under the agreements.   In determining whether to

---

[20]*Id*. at 1292.

[21]*See Armed Forces Ins. Corp. v. Allenbrook, Inc.*, Civ. A. No. 00-2435-GTV, 2001 WL 699735, at *2-3 (D. Kan. June 11, 2001) (holding that a dispute arising out of the parties' Support Services Agreement that lacked an arbitration clause was still subject to arbitration based on the broad language of an arbitration provision contained in the parties' related Software License Agreement); *LDS, Inc. v. Metro Can. Logistics, Inc.*, 28 F. Supp. 2d 1297, 1303-04 (D. Kan. 1998) (holding that a dispute arising out of the parties' Code Maintenance Agreement that lacked an arbitration clause was still subject to arbitration based on the broad language of an arbitration provision contained in the parties' sufficiently related License Agreement).

[22]*Armed Forces*, 2001 WL 699735, at *3;  *LDS*, 28 F. Supp. 2d at 1304.

compel arbitration of a dispute arising under an agreement lacking an arbitration clause when a related contract contains a broad arbitration clause that encompasses all matters in dispute, courts have considered the following specific factors: (1) whether the agreements incorporate or reference each other;[23]   (2) whether the agreements are dependent on each other[24] or relate to the same subject matter;[25] (3) whether the arbitration clause specifically excludes certain claims;[26] (4) whether the agreements are executed closely in time and by the same parties.[27]

In the instant case the arbitration clause in the GA Contract states:

> Any dispute arising between the parties *under this Contract* shall be governed by and construed and enforced pursuant to the laws of the state of Louisiana, excluding those laws relating to the resolution of conflict between laws of different jurisdictions.   Additionally, *any disputes between the parties* shall be resolved by arbitration conducted in New Orleans, Louisiana, in accordance with the commercial rules of the American Arbitration Association, and any award rendered in such arbitration may be confirmed in any court of competent jurisdiction.   You irrevocably consent and submit to the exercise of jurisdiction over You by any court situated in Louisiana for such purpose or for any other purpose related to this Contract. (emphasis added)

The first sentence of the arbitration clause addresses choice of law.   That provision refers to disputes arising between the parties "under this Contract."   The next sentence, however, contains the arbitration provision.   It states, "[a]dditionally, <u>any disputes between the</u>

---

[23]*SCOR Reinsurance*, 362 F.3d at 1291.

[24]*Id.* at 1292;  *LDS*, 28 F. Supp. 2d at 1304.

[25]*SCOR Reinsurance*, 362 F.3d at 1291.

[26]*Armed Forces,* 2001 WL 699735, at *3.

[27]*Personal Sec. & Safety Systems, Inc. v. Motorola, Inc.*, 297 F.3d 388, 392 (5th Cir. 2002).

parties shall be resolved by arbitration conducted in New Orleans, Louisiana." (Emphasis added.) The sentence contains no qualification that the disputes arise "under this Contract," in contrast to the first sentence. The Court finds that the arbitration clause is a broad provision that extends to disputes beyond the GA Contract in which it appears.

The Court next determines whether the GA Contract and the MGA Contract are sufficiently related to justify compelling arbitration of both claims in the present case. A review of the two contracts reveals that neither contract refers to the other or incorporates any provisions of the other. The contracts relate to the same subject matter, however, in that they both purport to create an agency relationship between Plaintiffs and Defendants. They appear to be interrelated parts of one transaction. Under the GA Contract, Plaintiffs' duties are to sell life, disability, and annuity policies; service Defendants' business; and to develop subordinate producers for Defendants by contracting and training them to sell these policies. The MGA Contract furthers the GA Contract by appointing Plaintiffs as a marketing agent of Defendants to recruit and develop sales representatives to market Defendants' products and services. Similarity in the titles of the two contracts - - - the General Agent Contract and the Marketing General Agent Agreement Contract - - - supports an inference that they are related and interdependent. The parties entered into both contracts on the same day. These facts imply that the two contracts were executed for the same or related purposes and were essentially part of one transaction. Because the GA Contract's arbitration provision covers "any dispute between the parties," and the GA Contract and MGA Contract appear essentially to be

interrelated parts of one transaction, the Court finds that the claims of Plaintiffs arising under the MGA Contract, like those under the GA Contract, should be submitted to arbitration.

IV.    **Summary**

In summary the Court finds that Defendants have not waived their right to arbitration. It further finds that the arbitration clause contained in the GA Contract also applies to the claims under the MGA Contract, as well as those arising under the GA Contract.  The Court will therefore grant the motion to compel arbitration on all Plaintiffs' claims arising under both the GA Contract and the MGA Contract.

**IT IS THEREFORE ORDERED THAT** Defendants' Motion to Stay and/or Dismiss and to Compel Arbitration (doc. 21) is granted.  Plaintiffs are hereby directed to submit their claims arising under both the GA Contract and the MGA Contract to arbitration in accordance with the terms of the GA Contract's arbitration clause.  All Plaintiffs' claims against Defendants are subject to arbitration; and this case is stayed pending arbitration.

**IT IS FURTHER ORDERED THAT** the parties shall proceed to arbitration in accordance with the provisions of the arbitration clause.

**IT IS FURTHER ORDERED THAT** this Court shall retain jurisdiction to review, modify, or vacate any arbitration awards, should any party choose to seek such action permitted by the Federal Arbitration Act.

**IT IS FURTHER ORDERED THAT** the parties shall file a joint status report, not less than once every 3 months, regarding the progress of the arbitration until the agreed arbitration procedures are completed.

Dated this 3rd day of April 2006, at Kansas City, Kansas.


s/ Gerald L. Rushfelt
Gerald L. Rushfelt
U.S. Magistrate Judge

cc:     All counsel

15